UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| SCOTTSBURG HOSPITALITY CORP. | § | |
| dba SHC MOTEL 6 VICTORIA | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | Civil Action No. 6:18-cv-38 |
| | § | |
| ROCKHILL INSURANCE | § | |
| COMPANY | § | |
| *Defendant* | § | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO QUASH AND FOR PROTECTIVE ORDER

COMES NOW, Plaintiff SCOTTSBURG HOSPITALITY CORP. dba SHC MOTEL 6 VICTORIA ("Plaintiff") and files this Response to Rockhill Insurance Company's ("Rockhill") Objections, Motion to Quash, and for Protective Order (Dkt. 17), and would respectfully show the Court as follows:

### NATURE AND STATE OF THE PROCEEDING

More than 100 days after Plaintiff originally requested Rockhill's corporate representative deposition, more than 40 days after Plaintiff noticed Rockhill's adjuster and corporate representative depositions for a date and location provided by Rockhill, and **two days** before those depositions were to take place, Rockhill filed its motion asking this Court for relief.

Shortly after filing this response, Plaintiff will be filing a motion to compel Rockhill to produce relevant documents it has been withholding during this prolonged period of delay.

### STATEMENT OF ISSUES TO BE RULED UPON

Rockhill styles its motion a "motion to quash and for protective order" for both the corporate representative depositions and deposition of Sherri King, individually. (Dkt. 17.) The

motion requests that the Court quash the notice in its entirety. (*Id.; see also* Dkt. 17-6, proposed order).

Rockhill bears the burden to show "good cause" to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense". FED. R. CIV. P. 26(c); *United States v. Garrett,* 571 F.2d 1323, 1326 n.3 (5th Cir. 1978). Particularly, "[p]rotective orders prohibiting depositions are rarely granted." *Bucher v. Richardson Hosp. Authority,* 160 F.R.D. 88, 92 (N.D.Tx. 1994); *Salter v. Upjohn Co.,* 593 F.2d 649, 651 (5th Cir. 1979). Thus, "a party seeking to quash a deposition in its entirety must satisfy the heavy burden of demonstrating good cause, and, in the Fifth Circuit, must establish 'extraordinary circumstances' to warrant such an action." *Bayview Loan Servicing, LLC v. Standard Guar. Ins. Co.*, No. SA-07-CA-394-XR, 2008 U.S. Dist. LEXIS 127137, at *2 (W.D. Tex. 2008); *Salter,* 593 F.2d at 651. To satisfy this "heavy burden," the movant must show a particular and compelling need for such a protective order, as conclusory assertions of injury are insufficient. *Bayview,* 2008 U.S. Dist. LEXIS 127137, at *2. This requirement "furthers the goal that courts only grant as narrow a protective order as is necessary under the facts." *Id.*

**BACKGROUND AND SUMMARY OF THE ARGUMENT**

Without any basis under the Federal Rules, Rockhill unilaterally cancelled the depositions of its claims adjuster Sherri King and corporate representative the day before those depositions were to take place in St. Louis, Missouri. Plaintiff's counsel first requested these depositions, including a list of topics, on November 9, 2018. (Ex. 1, email string between counsel). On January 8, 2019, Rockhill notified Plaintiff that "Ms. King will also be the corporate representative for several topics." (*Id.*, Jan. 8 email from Lindsay Todd.) After more than two months of delay, on January 16, 2019, Rockhill finally offered Ms. King in both her

individual and corporate capacities on February 27 in St. Louis. Plaintiff's counsel issued the notices on January 16. (*Id.*) More than 100 days after Plaintiff had initially requested the depositions, more than 40 days after they had been duly noticed, and two days before the depositions were to take place, Rockhill unilaterally cancelled them. (*Id.,* Jan. 25 email).

Not only does Rockhill fail to offer any basis under the Federal Rules for failing to present its witness, it makes two factually incorrect claims in its motion.

- **Claim 1**: "Prior to the Notice, the parties had discussed presenting Ms. King only in her individual capacity as the adjuster handling the subject claim." (Dkt. 17 ¶ 2.)

- **Truth**: "Ms. King will also be the corporate representative for several topics and we will be objecting to other topics." – Lindsay Todd, counsel for Rockhill, Jan. 8, 2019. (Ex. 1, Jan. 8 email string).

-----Original Message-----
From: Lindsay Todd <todd@mdjwlaw.com>
Sent: Tuesday, January 08, 2019 4:36 PM
To: Erin Stracener <estracener@raiznerlaw.com>; Heidi Mathis <heidim@mdjwlaw.com>
Cc: Andrew Slania <ASlania@raiznerlaw.com>; Ben Wickert <BWickert@Raiznerlaw.com>; Amy Hargis <AHargis@raiznerlaw.com>; Evan Johnston <johnston@mdjwlaw.com>
Subject: RE: Scottsburg (Motel 6) v. Rockhill Insurance / DEPO SCHEDULING

Erin,

Ms. King will also be the corporate representative for several topics and we will be objecting to other topics. She is not available on February 7 and 8 and we are checking on other dates. The deposition will be in St. Louis. What dates are you available after February 7 and 8.

Plaintiff's counsel replied the same day advising he would check on dates, but explaining that the "objections" to deposition topics are legally ineffectual under the Federal Rules, and that it was defendant's burden to obtain protective relief on those topics. (*See id.*) Defense counsel later offered February 27, the date for which the depositions were eventually noticed.

- **Claim 2**: "Rockhill's counsel did not receive the Notice via facsimile on January 16, 2019. Rockhill was not made aware of the Notice until February 5, 2019, in a telephone

conversation with attorney Ben Wickert in the office of Plaintiff's counsel, when Mr. Wickert indicated his intent to pursue the deposition on February 27, 2019. *See Exhibit C*."

- **Truth**: Exhibit C – the very evidence offered by Rockhill for the proposition that it never received a fax on January 16 – is a copy of an email *forwarding the successful January 16 fax service to Rockhill's counsel* to the correct fax number listed on its counsel's website and in its pleadings. Rockhill received the notice on January 16, and its own evidence conclusively proves it.

It is with this backdrop, and without any legitimate basis under the Federal Rules, that Rockhill requests relief from this Court. The fact remains that more than 17 months after Hurricane Harvey devastated Plaintiff's property and Plaintiff filed a claim, Plaintiff is no closer to obtaining relief owed by the insurance company that dutifully collected premiums from it. Rockhill sent a reservation of rights letter on September 25, 2017 replete with boilerplate exclusions, limitations, and other boilerplate Policy language assuring Plaintiff "this is not a denial of your claim." (Ex. 2, RoR letter). To date, Rockhill insists its "coverage determination is still ongoing." (Dkt. 17 at 4.)

Meanwhile, while Rockhill claims it is still determining coverage, Plaintiff's hotel property remains in a state of disrepair after Harvey. The destruction was so extensive that the Motel 6 Franchise sent a notice of default that gives Plaintiff until March 29, 2019 to cure or else lose its affiliation with Motel 6. (Ex. 3, Notice of Default and Potential Franchise Termination). Plaintiff has suffered, and continues to suffer, at the hands of Rockhill, and the discovery Plaintiff seeks in this lawsuit is critically necessary to vindicate its rights under the Policy and Texas law.

Chief Judge Orlando Garcia of the U.S. District Court for the Western District of Texas recently rejected some of the exact objections to deposition topics that Rockhill makes here, and ordered the defendant's corporate representative to testify. A copy of Chief Judge Garcia's order in *Westheimer Regency I, L.P. v. Great Lakes Reinsurance (UK) SE, et al.,* Case No. 5:18-cv-14-OLG (August 20, 2018) is attached as Exhibit 4.[1] In a case involving similar factual allegations, and the same causes of action under the Texas Insurance Code and common law, Chief Judge Garcia ordered the defendant to testify as to topics identical to **topic 2** (decision-making regarding reserves set on this claim), **topic 5** (procedures or policies or manuals procedures related to the handling of property damage claims), and **topic 8** (criteria and procedures for the selection and retention of independent adjusters and consultants handling wind and hail storm damage claims). This Court should likewise reject Rockhill's arguments, overruling its objections and denying its motion for protective order.

Rockhill bears a "heavy burden" to establish "extreme circumstances" for this Court to grant the relief it seeks. *Bayview,* 2008 U.S. Dist. LEXIS 127137, at *2 (W.D. Tex. 2008); *Salter,* 593 F.2d at 651. Rockhill cannot meet this burden, and the Court should deny its motion. Given the delays Rockhill has caused by its tactics, the Court should order a deposition on all topics (except topic 10, which Plaintiff has withdrawn without prejudice to later seeking) within 14 days.

### ARGUMENT/AUTHORITIES

1. **Rockhill cannot meet its burden to show that protective relief from testifying in a Rule 30(b)(6) deposition is appropriate.**

Under Federal Rule of Civil Procedure 26(c), the Court may, for good cause, issue an

---

[1] Plaintiff's counsel also represented the plaintiff in the *Westheimer Regency* action.

order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. *See* FED. R. CIV. P. 26(c)(1). The burden is on Rockhill, as movant for a protective order, "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Orchestrate HR, Inc. v. Trombetta*, No. 3:13-cv-2110-P, 2015 U.S. Dist. LEXIS 46045, at *4 (N.D. Tex. 2015); *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998) (citation omitted).

When a motion, as here, involves "a party seeking to quash a deposition in its entirety," the movant "must satisfy the heavy burden of demonstrating good cause, and, in the Fifth Circuit, must establish 'extraordinary circumstances' to warrant such an action." *Bayview*, 2008 U.S. Dist. LEXIS 127137, at *2. To satisfy this "heavy burden," the movant must show a particular and compelling need for such a protective order, as conclusory assertions of injury are insufficient. *Bayview,* 2008 U.S. Dist. LEXIS 127137, at *2. This requirement "furthers the goal that courts only grant as narrow a protective order as is necessary under the facts." *Id*

In a Rule 30(b)(6) deposition context, the party seeking the deposition must "describe with reasonable particularity the matters for examination." FED. R. CIV. P. 30(b)(6). The organization whose deposition has been noticed must then designate one or more persons on its behalf to "testify about information known or reasonably available to the organization." *Id.* Rockhill does not contest that Plaintiff has described the topics with "reasonable particularity," but instead objects to and moves for protection from the topics claiming they are outside the scope of discovery under Rule 26(b)(1). (*See* Dkt. 17 ¶ 9.)

2. **The deposition topics in Plaintiff's notice are within the scope of discovery of this case, and Rockhill must present a witness to testify on those topics.**

Rockhill's objections are unfounded, and it cannot meet its burden for a protective order.

Plaintiff responds to each argument in turn.

**A. Decision-making regarding reserves (topic 2) and policies and procedures for reserving practices for wind and hail storm damage (topic 9).**

In the own words of Rockhill's parent company, State Auto, in its latest publicly filed annual report, loss reserves are:

> management's best estimate at a given point in time of what we expect to pay to settle all losses incurred as of the end of the accounting period, based on facts, circumstances and historical trends then known. During the loss settlement period, additional facts regarding individual claims may become known, and consequently, it often becomes necessary to revise our estimate of the liability.[2]

The full report lists State Auto's entire loss reserves for the previous three years. This is public information for Rockhill's parent company, yet Rockhill takes the position that the reserves for this case are somehow privileged and not relevant.

On September 5, 2017, one week after Plaintiff filed its claim, Rockhill issued an initial advance payment of $50,000. (*See* Ex. 5). This conclusively demonstrates that, from the outset of the claim filing, Rockhill determined it had some exposure on this claim. Rockhill's determination of reserves applicable to Plaintiff's claim was therefore placed squarely within the scope of relevant discovery within a week of the claim filing. By its own standards, this was purportedly "management's best estimate" of the estimated loss at the time.

In cases like this one alleging violations of the Texas Insurance Code and of the common law duty of good faith, establishment of loss reserves is highly relevant because it "could well belie a later claim that the insurer thought in good faith that there was no possibility of the claim falling within coverage." *Trinity E. Energy, LLC v. St. Paul Surplus Lines Ins. Co.*, No. 4:11-CV-

---

[2]   *See* 2017 Annual Report of State Auto Financial Corporation, *available at* https://investor.stateauto.com/~/media/Files/S/State-Auto-IR/annual-reports/stfc-ar-2017-270318.PDF , at 12. Rockhill is listed as a subsidiary of State Auto. (*Id.* at 5.)

814-Y, 2013 U.S. Dist. LEXIS 199838, at *3 (N.D. Tex. Mar. 8, 2013).) In *Trinity,* like this a first-party insurance case, the court granted the Plaintiff's motion to compel loss reserves information. *See id.* at *8. *See also Hidden Cove Park & Marina v. Lexington Ins. Co.*, Civil Action No. 4:17-CV-00193, 2017 U.S. Dist. LEXIS 86378, at *6 (E.D. Tex. 2017) ("loss reserve information is relevant because it could show that Defendant knew or should have known its liability was reasonably clear, yet still denied Plaintiffs' claim.")

Rockhill asserts two objections to topics 2 and 9: privilege, and relevance. Both fail.

**(1) Rockhill fails to substantiate its privilege claims.**

Rockhill first objects on the basis that topics 2 and 9 request privileged information. (*See* Dkt. 17 at 19 (for topic 2 "Here, the reserves information sought is privileged because the reserves are reflective of Rockhill's mental impressions, conclusions, opinions or legal theories concerning the litigation"); at 36 (same, for topic 9.) Rockhill has not substantiated this claim.

First, as noted in Rockhill's parent company State Auto's annual report, the determination of loss reserves is simply not a function of an insurance company's legal department, but an accounting function that must be reported to a public company's shareholders. That Rockhill is attempting to shroud this under the guise of privilege is disingenuous.

Furthermore, Texas law[3] places the burden on the party claiming privilege, in this case Rockhill, to satisfy specific procedural and substantive requirements, including demonstrating there was (1) a confidential communication; (2) made for the purpose of facilitating the rendition of professional legal services; (3) between or amongst the client, lawyer, and their

---

[3] In this diversity case, Texas substantive law on attorney-client privilege applies. *McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, No. 3:14-cv-2498-B, 2016 U.S. Dist. LEXIS 68354, at *13 (N.D. Tex. May 25, 2016), citing FED. R. EVID. 501

representatives; and (4) the privilege has not been waived. *Curlee v. United Parcel Serv., Inc. (Ohio)*, No. 3:13-cv-344-P, 2014 U.S. Dist. LEXIS 121536, at \*4 (N.D. Tex. Aug. 29, 2014), citing TEX. R. EVID. 503(b).  The burden is on the party asserting the privilege to demonstrate how each document satisfies these elements. *See id.* A general allegation of privilege is insufficient to meet this burden. Instead, the proponent must provide sufficient facts by way of detailed affidavits or other evidence to enable the court to determine whether the privilege exists. *Id.* Moreover, Rule 26(b)(5) of the Federal Rules of Civil Procedure requires a party claiming privilege to "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." *See* FED. R. CIV. P. 26(b)(5)(A)(ii). Rockhill has not even attempted to meet this standard.

Importantly, to the extent Rockhill argues that certain responsive documents are subject to the attorney-client privilege simply because an attorney's name is included on an email or other document that may be relevant to the testimony on these topics, this argument also fails. The mere inclusion of an attorney on a communication or document does mean a privilege applies; other factors, including that the document was "made for the purpose of facilitating the rendition of professional legal services," must be satisfied. *See id.;* TEX. R. EVID. 503(b). In the insurance context, for instance, communications with attorneys concerning "bare facts" are not privileged because if they were, "insurance companies could simply hire attorneys as investigators at the beginning of a claim investigation and claim privilege as to all the information gathered." *In re Tex. Farmers Ins. Exch.*, 990 S.W.2d 337, 341 (Tex. App.—Texarkana 1999, pet. denied). And so if an attorney hired or employed by Defendants was actually assisting in the setting of reserves of this claim – something Plaintiff highly doubts is the

case – this would not be privileged. *See id.*

### (2) Reserves are relevant to Plaintiff's claims under the Texas Insurance Code.

Rockhill argues that reserves information is "irrelevant, overly broad, and reasonably calculated to lead to the discovery of admissible evidence." (Dkt. 17 ¶¶ 22, 35.)[4] As noted above, Rockhill paid $50,000 a mere week after Plaintiff filed its claim. But nearly 17 months after Hurricane Harvey, Rockhill claims it is *still* investigating Plaintiff's claims. Rockhill's loss reserves calculations, beginning from when the claim arose, "could well belie a later claim that the insurer thought in good faith that there was no possibility of the claim falling within coverage." *Trinity,* 2013 U.S. Dist. LEXIS 199838, at *3; *Hidden Cove*, 2017 U.S. Dist. LEXIS 86378, at *6. Indeed, Rockhill's own payment is evidence of this, but Plaintiff is entitled to additional information.

In the *Westheimer Regency* case, Chief Judge Garcia, citing the *Trinity* case, rejected similar objections by the defendant and ordered the defendant to testify on topic 2, regarding reserves on the claim at issue. (Ex. 4 at 6-7, citing *Trinity,* 2013 U.S. Dist. LEXIS 199838, at *2.)  The same logic applies for why Rockhill should have to present someone to testify on topic 9. Rockhill's policies governing setting of reserves on claims gives context to and underlie its ultimate decision. And as Chief Judge Garcia recognized, if Rockhill has an explanation for why its setting of reserves varied from its ultimate decision, it should "simply testify accordingly." (Ex. 4 at 7.)

### B. The procedures or policies or manuals related to the handling of property damage claims from 2015 to the present (topic 5)

---

[4] The 2015 amendments to the Federal Rules eliminated the "reasonably calculated to lead to the discovery of admissible evidence" language under the old version of Rule 26(b). Rockhill's boilerplate objection on that ground is without legal effect.

Rockhill argues that this topic is overly broad because it "is not limited to discovery for policies, procedures, or manuals specifically related to Plaintiff's type of claim" and that "policies, procedures, or manuals related to fire property claims or automobile property damages claims are wholly irrelevant to Plaintiff's allegations related to the handling of its claim." (Dkt. 17 at 26.) It makes no other objections to the relevance of these policies and procedures, because it cannot; they are plainly relevant to the claims asserted here.

Plaintiff is not interested in policies or procedures for automobile or fire claims, but is interested in the property policies and procedures applicable to Rockhill's adjustment of Plaintiff's claim. The topic is not overly broad because Plaintiff cannot know whether Rockhill possesses separate policies for each type of property claim (fire, auto, or as here, wind), or if they are all contained together. But as Plaintiff has represented to Rockhill, it is willing to limit its questioning to policies and procedures that were in place, and applicable to, handling of Plaintiff's claim, through the present.

This topic relates directly to Rockhill's compliance with its own procedures, a central issue of Plaintiff's claims under the Texas Insurance Code and common law. Plaintiff did not allege that Rockhill failed to comply with its own procedures, because Plaintiff cannot possibly know what those procedures are until Rockhill produces them. However, as Chief Judge Garcia noted in *Westheimer Regency,* this should not be a reason for Rockhill to avoid testifying on this topic:

> [W]hile Plaintiff's complaint does not allege any violation of any internal policy regarding the handling of property damage claims, it is likely that such policies would be relevant to Plaintiff's allegations that Defendants processed Plaintiff's claim in a manner inconsistent with the requirements of the Texas Insurance Code.

(Ex. 4 at 3.) This is precisely the case here, and the Court should deny Rockhill's motion on

topic 5.

### C. The training, oversight, or supervision of personnel employed in adjusting property claims in Texas from 2015 to the present (topic 6)

Plaintiff alleges in its complaint that the claims adjuster Rockhill assigned to this claim was "inadequately trained and refused to perform a competent investigation." (*See* Dkt. 1 ¶ 16). The caliber, experience, and quality of adjusters is directly relevant here, and Rockhill's selection, training, and supervision of those adjusters is directly relevant to that determination. For example, whether Rockhill even has an adjuster training program, whether the adjusters here did or did not partake in that program, and the details of that program (including whether adjusters are trained on the specific policy exclusions and limitations Rockhill cites in its reservation of rights letter), are just a few examples of the types of question that directly pertain to the claims in this case. As with topic 5, Plaintiff has represented to Rockhill, it is willing to limit its questioning to training, oversight, and supervision policies that were in place, and applicable to, handling of Plaintiff's claim, through the present. The Court should deny Rockhill's motion as to topic 6.

### D. The underwriting files referring or relating in any way to the policy or property at issue in this action (topic 4) and Defendant's or any applicable affiliate companies, underwriting policies and procedures for commercial properties (topic 11).

The underwriting of the policy in this case is directly relevant and, indeed, critical to Plaintiff's claims. Rockhill sent a letter dated September 25, 2017 purporting to reserve its rights, but including policy language portending a denial based on a "Pre-Existing Damage Endorsement:"

## Pre-Existing Damage Endorsement

It is understood and agreed that this policy shall exclude any loss or damage directly or indirectly caused by, resulting from or contributed to by any pre-existing damage to any covered property, at the time of the loss.

It appears that the above provisions apply to the facts of your case. By limiting policy reference to those cited, Rockhill does not waive other policy provisions. The policy in its entirety is incorporated by reference as though fully set forth in this letter.

(Ex. 2, letter) (emphasis added). This placed the underwriting of the Policy squarely within the relevant issues of this case. *See Heartland World Ministries v. Cent. Mut. Ins. Co.*, No. 3:13-CV-02337-M-BK, 2014 U.S. Dist. LEXIS 189735, at *3 (N.D. Tex. Feb. 20, 2014) (granting plaintiff's motion to compel production of underwriting file when defendant denied claim due to purported deferred maintenance at property.) One of these three things necessarily must be true: Rockhill (or a company it hired) (1) performed underwriting investigations or inspections of the properties that identified the supposed "pre-existing" damage it cited in it is letter; (2) performed underwriting investigations or inspections at the properties, but did not identify those issues, or (3) did not do any underwriting investigation or inspection at the properties. No matter the answer, at this stage, Rockhill must present a witness to answer Plaintiff's question. It should be required to produce a witness on topic 4. If, as Rockhill states, it hired another company to do this underwriting, the witness must simply testify to this. The words of Rockhill's counsel in a motion do not suffice.

Moreover, Rockhill must produce a witness to testify about its policies and procedures underlying its underwriting protocols (topic 11). The procedures applicable to the underwriting of Plaintiff policy will give context and relevance to Rockhill's ultimate decision to accept premium payments from Plaintiff. This topic is no "fishing expedition" as Rockhill claims; it provides

direct insight into Rockhill's decision to accept Plaintiff's insurance premiums despite its ultimate

denial for pre-existing property conditions. It must therefore present a witness on topic 11.

Of course, if Rockhill stipulates that anything related to the Properties' conditions before

the claim (e.g., wear and tear, deterioration, improper installation) cannot support a denial, then

Plaintiff need not obtain this underwriting information. But unless and until that happens, the

underwriting topics are directly relevant to this case, and a motion for protection is not warranted.

E. **The criteria and procedures for the selection and retention of independent adjusters and consultants handling wind and hail storm damage claims including, where applicable, the contract between the Defendant and the Defendant's third party adjusting company responsible for adjusting Plaintiffs' claim. (topic 8)**

Rockhill asserts the boilerplate objection of "irrelevant, overly broad, and not reasonably

calculated to lead to the discovery of admissible evidence" to this topic. (Dkt. 17 ¶ 34.) It then

objects because "no documents exist." (*Id.*) If it is true that Rockhill does not have any policies

and procedures for selecting independent adjusters and consultants, it must designate a witness

who will testify to this under oath. Its attorney's conclusory statement in its motion does not

suffice to justify a protective order on this topic. Chief Judge Garcia found for the plaintiff in

*Westheimer Regency* on this topic, as it pertained to independent adjusters, finding that the

"criteria by which . . . adjusters were selected is both relevant and proportionate," and ordering

that a witness must testify to that topic (Ex. 4 at 5.) In this case, Rockhill's selection of Rimkus

Consulting to prepare a report that ultimately led to a reservation of rights here is no different,

and the Court should deny Rockhill's motion as to topic 8.

F. **The bonus or incentive plan for adjusters and managers responsible for property damage claims in Texas in effect for the time period. (topic 7)**

The compensation of adjusters and managers is relevant. Many insurance companies

measure profitability based on a "combined ratio," which simply measures whether an insurance company earns more revenues in collected premiums than it spends payout out claims.[5] If Rockhill uses this measure of profitability at the adjuster and claims manager level – for example, if they pay bonuses or give incentives to adjusters or managers to deny claims – then the personnel assigned to Plaintiff's claims would have had extra incentive to deny the claim here. Plaintiff should be permitted to question Rockhill regarding compensation of the adjusters and managers to determine if such bias would exist in this case. The Court should deny Rockhill's motion as to topic 8.

## CONCLUSION/PRAYER

After wasting several months of Plaintiff's time and resources, misrepresenting key facts in its motion, and asserting boilerplate objections (some of which no longer comport with the language of the Federal Rules), Rockhill asks this Court for protective relief. The merits of Rockhill's motion fail in any event, but the Court should not reward Rockhill for its dilatory and untoward behavior. Plaintiff respectfully requests that the Court deny Rockhill's motion to quash and for protection in its entirety, and order Rockhill to appear for a deposition within 14 days of this order on all topics except topic 10.

Respectfully submitted,

**RAIZNER SLANIA LLP**

JEFFREY L. RAIZNER
Attorney-in-Charge

---

[5] *See, e.g.,* https://www.investopedia.com/ask/answers/042315/how-do-i-calculate-combined-ratio.asp.

State Bar No. 00784806
Southern District Bar No. 15277
2402 Dunlavy Street
Houston, Texas 77006
Phone: 713.554.9099
Fax:   713.554-9098
jraizner@raiznerlaw.com


*Of Counsel*:

ANDREW P. SLANIA
State Bar No. 24056338
Southern District Bar No. 1057153
AMY B. HARGIS
State Bar No. 24078630
Southern District Bar No. 1671572
BEN WICKERT
State Bar No. 24066290
Southern District Bar No. 973044
efile@raiznerlaw.com
2402 Dunlavy Street
Houston, Texas 77006
Fax:   713.554-9098
**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was furnished via ECF/electronic filing, U.S. Mail and/or facsimile to all counsel of record on March 11, 2019

Andrew Schulz
Lindsay Todd
MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.
900 S. Capital of Texas HWY
Las Cimas IV, Suite 425
Austin, Texas 78746
Telephone: (512) 610-4400
Facsimile: (512) 610-4401
**ATTORNEYS FOR DEFENDANT**


JEFFREY L. RAIZNER

Page **16** of **16**